IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| GEORGE R. GOLSON, on behalf of himself and all others similarly situated </br></br>    Plaintiff, </br></br>v. </br></br>PROVIDENT LIFE AND ACCIDENT INSURANCE COMPANY, *et al.*, </br></br>    Defendants. | Case No. 2:19-CV-00127-RAH </br>(WO) |

**MEMORANDUM OPINION AND ORDER**

This class action lawsuit concerns Defendant Provident Life and Accident Insurance Company's ("Provident") practice of allegedly underpaying cost-of-living adjustments ("COLA") on a long-term disability income insurance policy ("Policy") purchased by Plaintiff George R. Golson ("Golson") in 1984. According to Golson, as to himself specifically and a class generally, Provident has "employed a systematic nationwide practice of miscalculating insureds' COLA benefits that results in a shortage of benefits to insureds on a monthly basis and in violation of Provident['s] . . . contractual obligations." (Doc. 41 at 3.) This shortage, which amounted to between $1.29 and $2.85 per month, stemmed from Provident's use of a consumer price index from 1967 instead of 1988 when it calculated the annual COLA escalation under the Policy.

1

Pending before the Court are the motions for summary judgment filed by Provident and Defendant Unum Group, (Docs. 34, 47), which are directed to the sole issue of Golson's Article III standing to bring this suit against the Defendants.[1]  This standing issue turns strictly on whether Golson has suffered injury or harm because, according to the Defendants, Golson actually has been overpaid on the Policy.

After reading the parties' submissions and hearing oral argument, the Court concludes that the motions are due to be DENIED.

## **LEGAL STANDARD**

A court should grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). It is the movant who bears the initial burden of "identifying for the district court those portions of the record 'which it believes demonstrates the absence of a genuine issue of material fact.'" *Cohen v. United Am. Bank of Cent. Fla.*, 83 F.3d 1347, 1349 (11th Cir. 1996) (quoting *Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1396, *modified on other grounds*, 30

---

[1] Unum Group also filed a Motion to Dismiss under Rule 12(b)(6). (*See* Doc. 45.)  This motion is unrelated to the issue of standing, and instead addresses merits-related issues.  Because the parties requested the Court to proceed in a bifurcated manner and defer merits-related discovery and issues until after the Court has resolved the issue of standing, (Doc. 17), the Court will defer ruling on Unum's motion and will therefore deny the motion with leave to refile.  The Court also notes that at oral argument, Plaintiff's counsel suggested a possible willingness to voluntarily dismiss Unum as a defendant in this suit.  As such, the Court encourages the parties to discuss whether it is necessary for Unum to remain a defendant especially since it appears that Unum is not an obligated party under the Policy.

F.3d 1347 (11th Cir. 1994)). In the case in which the non-movant bears the burden of proof at trial, the movant may carry its initial burden by either negating an essential element of the non-movant's case or by demonstrating the absence of evidence to prove a fact necessary to the non-movant's case. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115-16 (11th Cir. 1993) (citation omitted).

Once the movant carries its initial burden, the non-movant may avoid summary judgment by demonstrating an issue of material fact. *Id*. at 1116. If the movant demonstrates the absence of evidence of a material fact for which the non-movant bears the burden of proof, then the non-movant must either show that the record contains evidence that the movant "overlooked or ignored" or "come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency." *Id*. at 1116-17 (citation omitted). The non-movant must provide more than a "mere scintilla of evidence" supporting its position, and "there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citation omitted).

Further, when analyzing a motion for summary judgment, a court draws all inferences from the evidence in the light most favorable to the non-movant and resolves all reasonable doubt in the non-movant's favor. *Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006). Notwithstanding this inference, "[t]here is [still] no


genuine issue for trial unless the non-moving party establishes, through the record presented to the court, that it is able to prove evidence sufficient for a jury to return a verdict in its favor." *Cohen*, 83 F.3d at 1349.

## BACKGROUND

**A. The Policy**

Golson, a former optometrist, purchased the Policy from Provident in 1984. (Doc. 1-1.)  In June 1989, Provident amended the Policy to increase the base monthly benefit amount from $3,000 to $4,600. (Doc. 1-2.)  As an additional benefit under the Policy, the Policy provided for an annual cost-of-living adjustment (also called a COLA).  (Doc. 1-1 at 3, 11.)

The COLA was determined by multiplying a benefit factor against the base monthly benefit amount ($4,600).  (Doc. 1-1 at 11.)  The benefit factor was based on a comparison of the Consumer Price Index for All Urban Consumers (CPI-U) for the "current" year against a "base" year. The base year was "the last CPI-U index published in the calendar year before disability begins." (*Id.*)  The current year, or "Current Index", was defined as "the last CPI-U index published in the calendar year before each payment is made." (*Id.*)

The Policy also provided that monthly benefits would be provided "for life" if Golson's total disability began before age 65. (*Id.* at 3.)  However, the COLA benefit ended when Golson turned 65.  (*Id.* at 10.)

### B. Golson's Claim

In 1993, Golson was diagnosed with post-polio syndrome and made a claim for disability benefits under the Policy. Golson's claim was approved, and Golson began receiving his monthly disability benefit on August 1, 1994. (Doc. 37-1 at 8, RFA No. 2; Doc. 37-1 at 42, INT No. 8.)

In November 1999, Provident ceased paying Golson his monthly benefit, which resulted in litigation between the parties that was settled in 2001. That litigation was resolved with Provident paying a large settlement sum and resuming payment of the monthly benefit in August 2002. (Doc. 37-1 at 2; Doc. 36-4 at 6.) Since that time, Provident has paid Golson monthly benefits under the Policy and has escalated the monthly benefit with a COLA up to 2016 when he turned 65. (Doc. 36-4 at 10, 15-16.)

### C. The COLA Calculation

In calculating the benefit factor used for the annual COLA, Provident used a CPI-U index from 1967. (Doc. 37-1 at 8, RFA No. 3; Doc. 37-1 at 45, INT No. 12.) "The rub", according to Golson, is that Provident should not have used the 1967 CPI-U index; instead, Provident should have used the 1988 CPI-U index. (Doc. 37 at 5.)

According to Golson's calculations, by using the incorrect index, Provident shorted Golson between $1.29 to $2.85 every month since 2002. Between January

2003 and September 2019, Golson was underpaid by $518.73. (Doc. 33-3 at 9, 13-15.) For the period from January 2013 to 2019, Golson claims this underpayment was less than $60. (Doc. 33-3 at 14-15.)

Golson filed this class action lawsuit on February 15, 2019 against Provident and Unum[2] to right the "[w]rongs created by Provident and Unum's 'across-the-board' miscalculation and misapplication of COLA benefits for insureds." (Doc. 41 at 6.)

## DISCUSSION

Distilled to its simplest, Provident contends that Golson has suffered no injury or harm and therefore lacks standing, not because he has not been damaged by the particular dispute over which index to apply, but because Golson overall has been overpaid on the Policy. This overpayment, according to Provident, primarily stems from one source.[3] That is, in January of every year, Provident actually paid Golson an extra day of COLA benefits (between $82.44 to $94.27 from 2013 to 2019). (Doc. 12 at 2-3; Doc. 39 at 7-8.) In other words, Golson lacks standing because the amount of the extra day (i.e., overpayment) paid every January exceeds the total amount of

---

[2] For the remainder of this Opinion, the Court will jointly refer to Provident and Unum as Provident.

[3] Provident also claims that Golson's expert witness "made a data entry mistake" by "inadvertently omitting a whole month's payment from his calculation." (Doc. 35 at 2; Doc. 39 at 2-4.) Golson disputes this assertion. (Doc. 36-3 at 6; Doc. 37 at 2-3.) The Court chooses to ignore this argument as it is neither pertinent nor dispositive of the standing issue.

the underpayments during the other eleven months of each year. Therefore, even if Golson is correct about Provident's use of an incorrect index factor and is correct that Provident has breached the Policy in that regard, any resulting damage is offset by the unrelated overpayment every January.

As the parties recognize, Article III standing is a threshold inquiry. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1988). Article III of the Constitution limits federal courts to adjudicating actual "cases" and "controversies." *See, e.g., Allen v. Wright,* 468 U.S. 737, 750 (1984), *abrogated on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc.,* 572 U.S. 118 (2014). "The party who invokes a federal court's authority must show, at an 'irreducible minimum,' that at the time the complaint was filed, he has suffered some actual or threatened injury resulting from the defendant's conduct, that the injury fairly can be traced to the challenged action, and that the injury is likely to be redressed by favorable court disposition." *Atlanta Gas Light Co. v. Aetna Cas. & Sur. Co.*, 68 F.3d 409, 414 (11th Cir. 1995).

As the Eleventh Circuit has said:

> Under elementary principles of standing, a plaintiff must allege and show that he personally suffered injury. If he cannot show personal injury, then no article III case or controversy exists, and a federal court is powerless to hear his grievance. This individual injury requirement is not met by alleging that injury has been suffered by other, unidentified members of the class to which the plaintiff belongs and which he purports to represent. Thus, a plaintiff cannot include class action allegations in a complaint and expect to be relieved of personally

> meeting the requirements of constitutional standing, even if the persons described in the class definition would have standing themselves to sue. A named plaintiff in a class action who cannot establish the requisite case or controversy between himself and the defendants simply cannot seek relief for anyone—not for himself, and not for any other member of the class.

*Griffin v. Dugger*, 823 F.2d 1476, 1482-83 (11th Cir. 1987) (multiple citations, quotation marks, and brackets omitted).

Standing is a low threshold. *Ross v. Bank of America, N.A.*, 524 F.3d 217, 222 (2d Cir. 2008). To establish Constitutional, or Article III, standing, a plaintiff must show: "1) that he personally has suffered an actual or prospective injury as a result of the putatively illegal conduct; 2) that the injury can be fairly traced to the challenged conduct; and 3) that the injury is likely to be redressed through court action." *Saladin v. City of Milledgeville*, 812 F.2d 687, 690 (11th Cir. 1987).

"[T]he fact that an injury may be outweighed by other benefits, while often sufficient to defeat a claim for damages, does not negate standing." *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990).

Here, the parties have contrasting positions regarding whether Golson has Article III standing. Provident's primary legal argument is that when an insurance company has "paid all benefits in full ... [t]here is no case or controversy[.]" (Doc. 35 at 8 (citing *Harrison v. United Mine Works of Am. 1974 Ben. Plan & Trust*, 941 F.2d 1190, 1193 (11th Cir. 1991); *Neighborhood Health P'ship Inc. v. Fischer,* 913 So. 2d 703, 705 (Fla. 3d DCA 2005); *Ramon v. Aries Ins. Co.*, 769 So. 2d 1053 (Fla.

8

3d DCA 2000).).   Furthering this point, Provident repeatedly directs this Court to the Eleventh Circuit's decision in *A&M Gerber Chiropractic LLC v. GEICO General Insurance Company*, 925 F.3d 1205 (11th Cir. 2019), as dispositive precedent on the issue before the Court.  This Court disagrees.

In *A&M Gerber*, the plaintiff sued his automobile insurance carrier over its handling of his claim for personal injury protection (PIP) benefits.  Under the automobile insurance policy, the insured could obtain up to $2,500 in PIP if he was not diagnosed by an authorized health care provider with an emergency medical condition (EMC) or up to $10,000 if he had such a diagnosis.  925 F.3d at 1208.  There, pre-suit, the insured received $7,311 in PIP benefits even though he had not been diagnosed with an EMC.  *Id*.  Despite receiving nearly three times the capped amount, the insured's assignee filed suit anyway, claiming that the insurance company maintained a general practice of underpaying PIP benefits.  *Id*.  The assignee did not seek monetary damages; instead, it sought classwide declaratory relief.  *Id*. at 1209.  The carrier moved for summary judgment, arguing that the assignee lacked standing because it was undisputed that the insured had received more than he was entitled to receive under the insurance policy.  *Id*.

On appeal to the Eleventh Circuit after the district court denied the insurer's summary judgment motion, the Eleventh Circuit reversed.  The appellate court, noting that the case did not involve damages for past harm, recognized that when a

9

plaintiff seeks declaratory relief, the plaintiff must allege facts from which it appears that there is a substantial likelihood that he will suffer injury in the future. *Id*. at 1210-1211. In that circumstance, because the insured already had received the maximum payout under the policy ($2,500), for declaratory relief purposes, it did not matter how the court interpreted the policy. *Id*. at 1212. In other words, all benefits had been exhausted.

*A&M Gerber* is inapplicable for several reasons. First, unlike there, Golson is seeking monetary damages due to Provident's alleged breach of the Policy. This is not a case, as was *A&M Gerber*, that concerned standing in the context of a claim for declaratory relief.

More importantly, *A&M Gerber* was "an exhaustion of benefits case." *Id*. at 1214. Meaning, that when the policy benefits (there, the $2,500 PIP limit) were fully exhausted, there was no case or controversy because no more money under the PIP benefit would be owed regardless of the outcome of the claim for declaratory relief. Here, Provident is still paying monthly disability benefits under the Policy and presumably will continue to pay these benefits until the day that Golson dies. Indeed, unlike in *A&M Gerber*, the Policy contains no monetary cap (like a lifetime maximum benefits cap) or limitation whatsoever on the amount of benefits paid, other than Golson's death. Thus, it cannot be said that Golson has exhausted his

10

benefits under the Policy, as was the case in *A&M Gerber*. From all that appears, Provident will be paying disability benefits for years and years to come.

Even more fundamental, the parties have contrasting positions regarding whether Golson has been underpaid or overpaid on the Policy. Through his expert CPA witness, Golson says he has been underpaid by $518.73 between January 2003 to April 2019. (Doc. 36-3 at 13-15; Doc. 36-3 at 5, 9.) Provident, using various spreadsheets and running tallies, says Golson has been overpaid by $709.53 for the same period, (Doc. 36-4 at 4), and by $390.27 from January 2013 to November 2019.[4] (Doc. 35 at 4-5, 9, 15.) Provident then goes on to argue that, regardless of which index one uses and regardless of which expert's data they use, all of the data generally shows that Golson has been paid more than he was contractually entitled to receive under the Policy.[5] (Doc. 39 at 7.) Therefore, Provident argues, it does not matter if it used the incorrect index, miscalculated the monthly COLA, or shorted Golson a few dollars every month, because the extra day of COLA paid every January rendered any unrelated breaches for a lesser total amount unactionable.

---

[4] Because the lawsuit was filed on February 15, 2019 and due to the applicable six-year statute of limitations, the operative time period for discussion is from February 2013 to the present. While the parties recognize the pertinent time frame at issue, they nevertheless date the issue as beginning in 2002 when Provident resumed making monthly disability payments after settlement of the previous litigation.

[5] As Provident acknowledges, its standing argument is based simply on the "amount of payment" and not the "basis" for that payment. (Doc. 39 at 7.)

11

The Court finds fault with Provident's argument for several reasons. First, the January overpayment bears no factual connection to the underpayments made during the remaining months of each year. In other words, Provident does not claim that it underpaid Golson from February through December every year because it overpaid him every January. Instead, they are completely independent. If Provident purposefully paid lesser amounts from February to December every year to account for the overpayment made every January, then the standing issue is much easier to resolve and is likely one warranting dismissal of this case on standing grounds. However, that is not the set of facts presented here.

Provident also does not allege that, had it been using the correct index and paying higher monthly payments to Golson, it would not have paid the extra day of COLA benefits each January. As a result, had Provident been using the 1988 index, as Golson argues it should, then Golson would have received a higher monthly payment in addition to the overpayment each January. This is further evidence that the January overpayment is not connected to Provident's use of the 1967 index.

Second, the Court also notes that Provident is not asking, nor has it ever asked, for Golson to repay the January overpayments. (Doc. 36-3 at 25.) Provident also does not argue that the overpayment is being asserted as a recoupment claim or offset claim to Golson's claims. Instead, the only import that the annual overpayment appears to have is the convenience that it now serves in defending against an

12

unrelated breach under its currently asserted Article III standing argument. Lawsuit aside, this overpayment has had no relevance in how Provident historically has otherwise paid benefits under the Policy, and presumably, how it will pay benefits going forward.

Third, as framed by Provident, its "no harm" argument ignores possible defenses that Golson may have as to any assertion by Provident to the applicability of the overpayment, such as voluntary payment, estoppel, waiver, and the like. *See, e.g., Manville v. Tennessee Valley Authority*, No. 2:99-CV-2294-VEH, 2006 WL 8436900, at *10 (N.D. Ala. July 31, 2006) (explaining defenses); *McCabe v. Comm'r of Social Security*, 661 F. App'x 596, 598 (11th Cir. 2016) (discussing possible waiver of overpayment of benefits). For example, Provident argues that every January, Provident knowingly, willfully, voluntarily, and without mistake pays an extra day of COLA benefits. A knowing and voluntary payment may very well be subject to legitimate legal defenses should Provident try to use that payment to its benefit through a claim or defense of recoupment or offset. Indeed, all of these are merits-related issues that very well could render Provident's voluntary overpayment irrelevant and without legal importance for purposes of Golson's claim that Provident has breached the Policy in other respects.

More importantly, Provident acknowledges, as does Golson, that an underpayment each month constitutes an independent and distinct breach of the

Policy. As a distinct breach, the Court must look at each and every month independently from each other month. That acknowledgement alone renders Golson with standing if for no other reason that Golson can show a financial injury or harm for each month in which the incorrect index is used.

To summarize, standing is a low threshold that requires Golson to show an actual or prospective injury that can be fairly traced to the challenged conduct and that can be redressed through court action. Given the allegations in the Complaint and Golson's contentions on summary judgment, which Provident itself has accepted as true for the purposes of the standing issue, the Court concludes there is sufficient harm or injury connected to the use of an incorrect index to proceed. This is true even if this harm or injury is otherwise "outweighed by other benefits", such as Provident's payment of an extra day of COLA benefits every January.

## **CONCLUSION**

For the foregoing reasons, the Court hereby DENIES the Defendants' motions for summary judgment on the issue of standing. According, it is ORDERED as follows:

1. the Motion for Summary Judgment of Defendant Provident (Doc. 34) is DENIED;

2. the Motion for Summary Judgment of Defendant Unum Group (Doc. 47) is DENIED;

3. the Motion to Dismiss of Defendant Unum Group (Doc. 45) is DENIED as premature; and

4. pursuant to the Court's Order of May 28, 2019 (Doc. 18), the parties shall file a new Rule 26(f) report proposing a schedule for the remaining proceedings.

DONE and ORDERED on September 28, 2020.

                                                /s/ R. Austin Huffaker, Jr.
                                      R. AUSTIN HUFFAKER, JR.
                                      UNITED STATES DISTRICT JUDGE